

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE May 17, 2018
Fairhurst, CJ.
**CHIEF JUSTICE**

This opinion was filed for record
at 8:00 am on May 17, 2018

SUSAN L. CARLSON
**SUPREME COURT CLERK**

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 94346-0 |
| | ) | |
| Respondent, | ) | En Banc |
| v. | ) | |
| | ) | |
| MICHAEL DAVID MURRAY, | ) | Filed ___MAY 1 7 2018___ . |
| | ) | |
| Petitioner. | ) | |
| | ) | |

WIGGINS, J.—Michael David Murray appeals his exceptional sentence for three counts of indecent exposure. His appeal presents two questions. First, we must decide whether the sexual motivation aggravator, RCW 9.94A.535(3)(f), can apply to the crime of indecent exposure, RCW 9A.88.010. We hold that because indecent exposure lacks an inherent sexual motive, the sexual motivation aggravator may apply. Second, we must decide whether the rapid recidivism aggravator, RCW 9.94A.535(3)(t), was void for vagueness as applied to Murray. Because a reasonable person would not have to guess that reoffending 16 days after being released from jail is "shortly after," we hold that the rapid recidivism aggravator was not void for vagueness as applied to Murray. Consequently, we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

I. Factual History

In early 2015, Murray was released from King County jail. Sixteen days after being released, Murray exposed his penis in public to four different women on three separate occasions, touching himself in two of the incidences. First, Murray exposed his penis and masturbated in front of S.L. in a retirement home where she worked. The next day, Murray exposed his penis to C.Y. while alone in an elevator with her. Four days later, Murray exposed his penis and masturbated in front of L.S. while she was cutting K.N.'s hair.

II. Procedural History

The State charged Murray with three counts of indecent exposure. Because of a previous conviction for indecent liberties, Murray's three counts of indecent exposure were elevated from a misdemeanor to a class C felony. RCW 9A.88.010(2)(c). Additionally, the State alleged two aggravating factors: that the offenses were sexually motivated and that the offenses were committed shortly after Murray's release from jail (i.e., rapid recidivism).

At trial, the State presented the testimony of three previous victims to whom Murray had exposed his penis; he had also masturbated during two of these previous incidents. These testimonies were used for the purpose of proving motive, intent, and absence of mistake or accident. In response, Murray presented a defense of diminished capacity. He called an expert to testify that he lacked inhibitive control because of a previous brain injury.

The jury rejected Murray's defense and found Murray guilty on all three counts of indecent exposure. The jury also found that the sexual motivation and rapid recidivism aggravators were proved beyond a reasonable doubt. As a result, the trial court imposed an exceptional sentence of 36 months' imprisonment. Murray appealed his conviction to Division One of the Court of Appeals.

On appeal, Murray challenged his exceptional sentence, arguing that it was clearly excessive because of his brain injury. He also argued that the sexual motivation aggravator and rapid recidivism aggravator did not apply. Alternatively, he argued that the rapid recidivism aggravator was void for vagueness under the Fifth Amendment to the United States Constitution. The Court of Appeals rejected all of these arguments and affirmed Murray's conviction and sentence. *State v. Murray*, No. 74422-4-I, slip op. at 1, 14 (Wash. Ct. App. Mar. 6, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/744224.pdf.

Murray appealed the Court of Appeals decision to this court. We granted review on two issues: (1) whether the sexual motivation aggravator can apply to indecent exposure and (2) whether the rapid recidivism aggravator is unconstitutionally vague.

STANDARD OF REVIEW

We review matters of statutory interpretation de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). We also review questions of constitutional law de novo. *State v. Rice*, 174 Wn.2d 884, 892, 279 P.3d 849 (2012).

3

ANALYSIS

We decide two issues.[1] First, we hold that the sexual motivation aggravator can apply to indecent exposure because indecent exposure does not inherently require a sexual motive. Second, we hold that the rapid recidivism aggravator was not unconstitutionally vague as applied to Murray because a person of reasonable understanding would not have to guess that reoffending 16 days after being released from jail qualifies as "shortly after being released from incarceration." RCW 9.94A.535(3)(t). As a result, we affirm the Court of Appeals.

I.    Does the indecent exposure aggravator inherently require a sexual motive?

Because indecent exposure does not inherently require a sexual motive, we hold that the sexual motivation aggravator can apply.

Generally, a defendant's sentence falls within a standard range based on the offender score and the seriousness of the crime. RCW 9.94A.510. However, a court may impose a sentence outside the standard range when it finds substantial and compelling reasons justifying such an exceptional sentence. RCW 9.94A.535. A court can impose a sentence outside the standard range if facts support an aggravated sentence.[2] *Id.; see also* RCW 9.94A.537.

---

[1] Murray also asks us to decide the broader question of whether aggravators listed in RCW 9.94A.535 are subject to void for vagueness challenges. We need not resolve this question because even if we assume that Murray can bring a void for vagueness challenge, the rapid recidivism aggravator was not void as applied to him. As a result, we do not reach the broader question of whether aggravators listed in RCW 9.94A.535 are subject to void for vagueness challenges generally.

[2] Generally, facts supporting an aggravated sentence must be submitted to the jury and proved beyond a reasonable doubt. RCW 9.94A.537.

4

Murray was sentenced above the standard range based on the sexual motivation aggravator. RCW 9.94A.535(3)(f); *see also* RCW 9.94A.835. The sexual motivation aggravator is based on the recommendation of the former Governor's Task Force on Community Protection. WASH. STATE GOVERNOR'S TASK FORCE ON CMTY. PROT., FINAL REPORT (1989). The task force recommended that the legislature create a sexual motivation aggravator to help control sex offenders. *Id.* at II-9. It described the purpose behind the sexual motivation aggravator as increasing the punishment for defendants who commit crimes for the purpose of sexual gratification:

> Many offenders commit crimes which cannot be labeled as sex crimes under the existing criminal code, but their sexual motivation is clear. Offenders who break into women's homes and steal underwear, or those who enter homes to masturbate in front of female residents, are quite different from burglars who steal electronic equipment. Under current law, however, burglars with a sexual motivation are labeled only as burglars, receive no calculated enhancements for their more serious conduct, and are not eligible for special sentencing options to mandate treatment.
>
> . . . .
>
> . . . Under current law, the court or jury can make a special finding regarding deadly weapon use, and the Task Force recommends a similar provision be established for felonies with a sexual motivation. The finding will carry three consequences in addition to the labeling: 1) consideration for an aggravated sentence outside the range; 2) higher offender score points for any future sex offenses; and 3) eligibility for commitment as a sexually violent predator . . . .

*Id.* at II-4. Ultimately, the legislature adopted the task force's proposed legislation creating the sexual motivation aggravator. *Compare id.* at III-39, *with* LAWS OF 1990, ch. 3, § 601.

The definition of the sexual motivation aggravator is somewhat labyrinthine. We begin with its definition: "'Sexual motivation' means that one of the purposes for which

5

the defendant committed the crime was for the purpose of his or her sexual gratification." RCW 9.94A.030(48). Whenever "sufficient admissible evidence exists" that "would justify a finding of sexual motivation" (RCW 9.94A.835(1)), a prosecutor must charge a defendant with the aggravator, unless the defendant is charged with a sex offense as defined in RCW 9.94A.030(47). This statute lists a series of crimes that constitute a sex offense, including, among others, rape, child molestation, indecent liberties, sexual exploitation of a minor, and incest. *See* RCW 9.94A.030(47)(a)(i)-(iii).

The exclusion of sex offenses makes sense because the purpose of creating the sexual motivation aggravator was to enhance the punishment of an offender who was sexually motivated in committing a crime that did not necessarily include sexual motivation, as explained by the Governor's Task Force on Community Protection. When it defined sex offenses and defined the punishments for those crimes, the legislature already considered the sexual nature of these crimes.[3]

Indecent exposure is *not* one of the crimes defined as a sex offense. Accordingly, indecent exposure is potentially one of the crimes for which the sexual motivation aggravator can apply. But there is yet another limitation on charging a defendant with the sexual motivation aggravator: a court may not enhance a defendant's sentence based on an aggravator that is already an element of the primary offense. *See State v.*

---

[3] The dissent correctly points out that enumerated sex offenses "can be committed for multiple purposes, including sexual gratification." Dissent at 4. However, the possible motivations behind enumerated sex crimes are legally irrelevant to the question before us. The statute clearly excludes the application of the sexual motivation aggravator to these crimes. RCW 9.94A.030(47). In contrast, indecent exposure may also have multiple possible motivations. But indecent exposure is not a statutorily excluded offense. *Id.* Thus, the question remains: Is sexual motivation inherent in the crime of indecent exposure? While sexual gratification may be one of the motivations behind an indecent exposure, it is not necessarily one. *See infra* at 8. Consequently, sexual motivation may apply to some but not to other incidents of indecent exposure.

*Thomas*, 138 Wn.2d 630, 636, 980 P.2d 1275 (1999) ("Thus, an exceptional sentence may not be based on factors inherent to the offense for which a defendant is convicted."); *see also State v. Stubbs*, 170 Wn.2d 117, 127-28, 240 P.3d 143 (2010) (concluding that because the "'great bodily harm'" aggravator encompassed an element of first degree assault, it could not be used to enhance a defendant's sentence). Thus, "sexual motivation logically applies only to offenses that are *not* inherently sexual in nature, ascribing additional culpability where the facts nevertheless prove the crime was undertaken for the purpose of sexual gratification." *Thomas*, 138 Wn.2d at 636.

Murray argues that his crime—indecent exposure—is inherently sexual in nature and consequently that the sexual motivation aggravator cannot apply. A person is guilty of indecent exposure when "he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm." RCW 9A.88.010. The statute does not define "obscene." "[O]bscene" is defined in the dictionary as "disgusting to the senses usu. because of some filthy, grotesque, or unnatural quality[;] . . . grossly repugnant to the generally accepted notions of what is appropriate[;] . . . offensive or revolting as countering or violating some ideal or principle: as . . . abhorrent to morality or virtue : stressing or reveling in the lewd or lustful . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1557 (2002). This court has also defined "obscene" as "a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others." *State v. Galbreath*, 69 Wn.2d 664, 668, 419 P.2d 800 (1966). In turn, "lascivious"

7

is defined as "inclined to lechery : LEWD, LUSTFUL" or "tending to arouse sexual desire : LIBIDINOUS, SALACIOUS." WEBSTER'S, *supra*, at 1274.

Nothing in the statute or these definitions inherently *requires* that an exposure be committed with a sexual motive. As the State notes in its brief, there are several conceivable examples where an individual could be convicted of indecent exposure but lack sexual motivation: (1) flashing a passerby for shock value, (2) streaking naked across a school campus, or (3) mooning someone out a window. *See* Suppl. Br. of Resp't at 10-11. Consequently, while an obscene exposure might be sexually motivated, a sexual motive is not an inherent requirement. Therefore, because indecent exposure does not inherently require a sexual element, we conclude that the sexual motivation aggravator can apply to convictions of indecent exposure.

II.     Was the rapid recidivism aggravator void for vagueness as applied to Murray?

The due process clauses of the Fifth Amendment and the Fourteenth Amendment to the United States Constitution require that statutes afford citizens a fair warning of prohibited conduct. *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). A statute is unconstitutionally vague if (1) "it 'fails to define the offense with sufficient precision that a person of ordinary intelligence can understand it,'" or (2) "'it does not provide standards sufficiently specific to prevent arbitrary enforcement.'" *State v. Duncalf*, 177 Wn.2d 289, 296-97, 300 P.3d 352 (2013) (quoting *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004)). It is not necessary that a person be able to predict with complete certainty the exact point at which his or her actions would qualify as prohibited. *State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). Instead, as long as "a person of reasonable understanding is [not] required to guess at the meaning

8

of the statute," "notwithstanding some possible areas of disagreement, the ordinance is sufficiently definite." *Duncalf,* 177 Wn.2d at 297; *Douglass,* 115 Wn.2d at 179.

When examining whether a statute is void for vagueness, we analyze the statute's language in context and afford the language a "sensible, meaningful, and practical interpretation." *Douglass,* 115 Wn.2d at 180. The presence of undefined terms "does not automatically mean that the enactment is unconstitutionally vague." *Id.* Instead, "the court may consider the plain and ordinary meaning as set forth in a standard dictionary." *State v. Bahl,* 164 Wn.2d 739, 754, 193 P.3d 678 (2008).

Here, Murray argues that the rapid recidivism aggravator is unconstitutionally vague as applied to him.[4] The rapid recidivism aggravator justifies an exceptional sentence when the jury finds that "[t]he defendant committed the current offense shortly after being released from incarceration." RCW 9.94A.535(3)(t). "Shortly after" is not defined in the statute. Murray contends that this lack of a definition, along with the prosecutor's statement that it was up to the jury to decide whether the defendant's actions satisfied the aggravator, evinces that the aggravator is impermissibly vague.

"Shortly" is defined as "in a short time : PRESENTLY, SOON." WEBSTER'S, *supra,* at 2103. In turn, "short" is defined as "not extended in time : of brief duration : lasting a little while only." *Id.* at 2102. There are four Court of Appeals cases examining if a period of time was "shortly after" incarceration. First, in *State v. Cham,* the Court of Appeals held that the defendant's "commission of a crime within one hour of release from jail

---

[4] When an individual makes a vagueness challenge that does not involve the First Amendment, courts evaluate the statute as applied rather than evaluating it for facial vagueness. *Douglass,* 115 Wn.2d at 182.

9

satisfie[d]" the rapid recidivism aggravator. 165 Wn. App. 438, 450, 267 P.3d 528 (2011). Second, in *State v. Butler*, the Court of Appeals concluded that a defendant's actions committed "within hours of his release" qualified as "shortly after release from incarceration." 75 Wn. App. 47, 54, 876 P.2d 481 (1994). Third, in *State v. Saltz*, the Court of Appeals agreed that the commission of a crime one month after a defendant was released from incarceration qualified as "'shortly after.'" 137 Wn. App. 576, 584-85, 154 P.3d 282 (2007).[5] Fourth, in *State v. Combs*, the Court of Appeals held that the rapid recidivism aggravator did *not* apply when a defendant attempted to elude police six months after he was released from incarceration. 156 Wn. App. 502, 505, 232 P.3d 1179 (2010). Although the court declined to "set an outer time limit on what constitutes a short period of time," it reasoned that because "[a]ttempting to elude typically is an impulse crime brought about by circumstances," the defendant's actions six months after being released from incarceration was not a short period of time. *Id.* at 506-07. Thus, our Court of Appeals has upheld the imposition of the aggravator when a defendant reoffends within a few hours of release up to a month after release from incarceration. But under the facts in *Combs*, they held that a period of six months was not "rapid recidivism" for an impulse crime. *Id.* at 507.

Here, Murray began reoffending 16 days after being released from King County jail. Considering the fact that Murray was previously incarcerated for indecent liberties

---

[5] In *Saltz*, the defendant stipulated to his release date and to the date of the charged crime (one month later) and that "it was 'shortly after being released from incarceration.'" 137 Wn. App. at 584. Thus, the Court of Appeals did not need to reach the question of whether the defendant's conduct qualified as "shortly after." However, the court chose to address the question and agreed that the facts met the requirements of the rapid recidivism aggravator. *See id.* at 585.

and indecent exposure, the mere two weeks and two days between his release and reoffense is especially brief. *See id.* at 506 (noting that "similarity of offenses or victims" is "additional evidence" of the defendant's disregard for the law, "the gravamen" of rapid recidivism). A person of reasonable understanding would not have to guess that reoffending 16 days after being incarcerated is within a short time and within the proscribed conduct under the rapid recidivism aggravator. *Duncalf*, 177 Wn.2d at 297. Thus, we hold that the rapid recidivism aggravator was not void for vagueness as applied to Murray.

## CONCLUSION

In sum, we affirm Murray's sentence. The sexual motivation aggravator may apply to indecent exposure because indecent exposure does not inherently require a sexual motive. In addition, the rapid recidivism aggravator was not void for vagueness as applied to Murray. A person of reasonable understanding would not have to guess that reoffending 16 days after being released from incarceration is proscribed conduct under the rapid recidivism aggravator. Consequently, we affirm the Court of Appeals.

Wiggins, J.

WE CONCUR.

Fairhurst, C.J.

González, J.

Owens, J.

Lawrence-Berrey, J.P.T.

Stephens, J.

Yu, J.

No. 94346-0

MADSEN, J. (dissenting)—The majority holds that the sexual motivation aggravator may be applied in this case because indecent exposure is not defined as a "sex offense" under RCW 9.94A.030(47), and sexual motivation is not inherent in the crime. Given the definition of the crime of indecent exposure, it is unimaginable that the lascivious exhibition of sexual body parts is not a sexually motivated act. I dissent and would hold that the sexual motivation aggravator may not be applied to enhance the penalty for indecent exposure because sexual motivation is inherent in the crime of indecent exposure.

## Discussion

A court may impose a sentence above the standard range if the crime of conviction was committed with sexual motivation. RCW 9.94A.535(3)(f). The sexual motivation aggravator may not be used to enhance sentences for sex offenses defined under RCW 9.94A.030(47), or in circumstances where sexual motivation is inherent in the crime of conviction. *State v. Thomas*, 138 Wn.2d 630, 636, 980 P.2d 1275 (1999). While indecent exposure is not among those defined as "sex offenses" under RCW

9.94A.030(47), the plain language of RCW 9.94A.030(48) and RCW 9A.88.010 demonstrate that it is inherently sexually motivated.

Under RCW 9.94A.030(48), "'[s]exual motivation' means that *one of the purposes* for which the defendant committed the crime was for the purpose of his or her sexual gratification." (Emphasis added.) Indecent exposure is the intentional act of making "any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm." RCW 9A.88.010(1). This court has defined "obscene" as "a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others." *State v. Galbreath*, 69 Wn.2d 664, 668, 419 P.2d 800 (1966). "In turn, 'lascivious' is defined as 'inclined to lechery : LEWD, LUSTFUL' or 'tending to arouse sexual desire : LIBIDINOUS, SALACIOUS.' WEBSTER'S [THIRD NEW INTERNATIONAL DICTIONARY 1274 (2002)]." Majority at 7-8. By definition, it is indisputable that *one of the purposes* for which a defendant commits indecent exposure is for sexual gratification.

The majority rejects the obvious, citing examples of indecent exposure that it says are not sexually motivated: "(1) flashing a passerby for shock value, (2) streaking naked across a school campus, or (3) mooning someone out a window." *Id.* at 8. I disagree. These actions constitute the crime of indecent exposure only because they involve the lascivious exhibition of sexual body parts.

2

While sexual gratification may not be the primary purpose of those acts, as the majority notes, it is certainly *one of the purposes*. Indeed, the only reason "flashing a passerby" carries any shock value is because it is lascivious exhibition of sexual body parts, which tends "to arouse sexual desire." WEBSTER'S, *supra*, 1274. The same is true for streaking and mooning. Sexual gratification may not be the only purpose for these acts, but it is inconceivable that openly exposing sexual body parts in a lascivious manner is not, at least in part, for the defendant's sexual gratification. In holding that sexual motivation is not inherent in the crime of indecent exposure, the majority appears to require that sexual motivation must be the *primary purpose*, rather than *one of the purposes*, "for which the defendant committed the crime." RCW 9.94A.030(48). This is at odds with RCW 9.94A.030(48).

In addition, the majority's attempt to explain the distinction between indecent exposure and crimes for which a sexual motivation aggravator may not be applied demonstrates a fundamental misunderstanding of sex crimes, which contributes to its faulty conclusion that sexual motivation is not inherent in the crime of indecent exposure. The majority says,

> The exclusion of sex offenses makes sense because the purpose of creating the sexual motivation aggravator was to enhance the punishment of an offender who was sexually motivated in committing a crime that did not necessarily include sexual motivation . . . . When it defined sex offenses and defined the punishments for those crimes, the legislature already considered the sexual nature of these crimes.

Majority at 6.

3

I see no difference between indecent exposure and the crimes defined as sex offenses. All of these crimes are sexual in nature. And, as with the crimes defined as sex offenses, indecent exposure can be committed for multiple purposes, including sexual gratification. *See* NAT'L RESEARCH COUNCIL, UNDERSTANDING VIOLENCE AGAINST WOMEN 59 (1996) ("It also has been argued that rape, in particular, represents fulfillment of sexual needs through violence [(LEE ELLIS, THEORIES OF RAPE: INQUIRIES INTO THE CAUSES OF SEXUAL AGGRESSION (1989))], but research has found that motives of power and anger are more prominent in the rationalizations for sexual aggression than sexual desires [(David Lisak & Susan Roth, *Motives and Psychodynamics of Self-Reported, Unincarcerated Rapists*, 60 AM. J. OF ORTHOPSYCHIATRY 268-80 (1990); David Lisak, *Subjective Assessment of Relationships with Parents by Sexually Aggressive and Nonaggressive Men*, 9 J. OF INTERPERSONAL VIOLENCE 399-411 (1994))]". Indeed, violence against women, such as rape, "is widely believed to be motivated by needs to dominate women." *Id.* Or, "[f]or instance, the prison rapist may rape to establish himself above his victim in the prison hierarchy; by dominating his victim, he elevates his own position. He may also establish power in the prison community because, like others who share or display their rapes, he sends the message that, 'because I rape, I deserve your respect.'" Katharine K. Baker, *Once A Rapist? Motivational Evidence and Relevancy in Rape Law*, 110 HARV. L. REV. 563, 609 (1997).

Another rapist typology is the "anger rapist," who

assaults his victim completely. He attacks all parts of her body, often forces her to engage in repeated, nonsexual degrading acts, and uses much more violence than is necessary to force her into submission. "The aim of this type of rapist is to vent his rage on his victim and to retaliate for perceived wrongs or rejections he has suffered at the hands of women. . . . This offender displays a great deal of anger and contempt toward women."

Baker, *supra*, at 611 (alteration in original) (footnotes omitted) (quoting A. Nicholas Groth, Ann Wolbert Burgess & Lynda Lytle Holmstrom, *Rape: Power, Anger, & Sexuality*, 134 AM. J. PSYCHIATRY, 1239, 1241(1977) and citing A. NICHOLAS GROTH & H. JEAN BIRNBAUM, MEN WHO RAPE: THE PSYCHOLOGY OF THE OFFENDER 44 (1979)).

Similar to the examples of indecent exposure that the majority says are not sexually motivated, rape is often not primarily motivated by the defendant's desire for sexual gratification. Rather, the sexual conduct involved in these crimes is a mechanism to achieve a different goal. That goal may be power, dominance, or aggression, which is achieved through sexual conduct. In instances of indecent exposure, that goal may be "shock value," as the majority suggests, but, as with other sex crimes, one of the purposes of indecent exposure is the defendant's sexual gratification.

I would hold that the sexual motivation aggravator may not be applied to enhance the sentence for indecent exposure, as sexual motivation is inherent in the crime. Accordingly, I respectfully dissent.

5

Madsen, J.